# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-KA-02721-SCT

*JONATHAN DUNCAN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/21/2003 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | JASPER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LESLIE D. ROUSSELL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. DANIEL HINCHCLIFF |
| DISTRICT ATTORNEY: | EDDIE H. BOWEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/10/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE WALLER, P.J., EASLEY AND GRAVES, JJ.

## EASLEY, JUSTICE, FOR THE COURT:

### PROCEDURAL HISTORY

¶1.    Jonathan Duncan was indicted by a Jasper County grand jury in February 2002, for capital murder for allegedly killing Marty Brady, with or without deliberate design, in violation of Miss. Code Ann. § 97-3-19(2)(e), during the commission of the armed robbery of Linda Rayner by placing her in fear of immediate injury to her person by exhibition of a deadly weapon, a gun, and taking approximately $840 in U.S. currency from her which belonged to Brady and Brady's Country Store.    Duncan was tried two times on the capital murder

indictment. Both trials resulted in a hung jury, and the trial court declared mistrials in both trials.

¶2. Duncan was re-indicted in February 2003, on a two-count indictment, Count I: murder for allegedly killing Brady, with deliberate design to effect death, in violation of Miss. Code Ann. § 97-3-19 and Count II: armed robbery for allegedly taking property of another, Rayner, by placing her in fear of immediate injury to her person by exhibition of a deadly weapon, a gun, and taking approximately $840 in U.S. currency from her which belonged to Brady and Brady's Country Store, in violation of Miss. Code Ann. § 97-3-79. At the State's request, the trial court dismissed the original indictment in cause no. 22-36 based on the re-indictment in cause no. 23-22. The entry of nolle prosequi as to the original indictment was made and granted by the trial court prior to the third trial.

¶3. Duncan received a jury trial on the two-count indictment. Duncan did not testify. The jury returned a verdict of guilty of armed robbery on Count II of the indictment, but the jury was unable to reach a verdict on Count I for Brady's murder. The jury sentenced Duncan to life imprisonment for the armed robbery conviction.

¶4. Following the conviction and sentence, the trial court denied Duncan's motion for judgment notwithstanding the verdict or, in the alternative, a new trial. Duncan now appeals to this Court in forma pauperis.

**FACTS**

¶5. On or about June 8, 2001, two black males wearing ski masks, gloves, and brandishing pistols entered Brady's Country Store, a convenience store located in Jasper County,

2

Mississippi. Rayner testified that when the two men came in the store she was in the process of "getting ready to close up" the store and "tallying up the money." When the two men entered the store, Rayner was standing behind the counter counting money and talking on the telephone and to her brother, Brady. Rayner testified that both men had guns which they pointed at Brady. The men instructed Rayner and Brady to give them the money. Rayner heard a shot, and she saw Brady fall to the floor. Rayner testified that she did not see which man shot Brady. Rayner stated that when Brady was shot, she saw him fall to the floor, and she then went "hysterical." Rayner then fell to the floor and started screaming. According to Rayner, when Brady fell to the floor, the shorter, stockier of the two men came behind the counter and took the money from her. She testified that he said, "give me the money bitch." Rayner described the other man as taller and thinner with a "lower left eye." Rayner testified that she handed the money over to the men because she was afraid for her own life. The two men left the store with approximately $840 in cash, and she heard a car "crank up and leave."

¶6. Co-defendant, Jamie Jones, testified on behalf of the State. Jones had been indicted for capital murder, but he pled to armed robbery in exchange for dismissal of the capital murder charge. Jones stated that he pled without a recommendation from the State and understood that he could be sentenced to life for the armed robbery. Jones testified that prior to the robbery on June 8, 2001, he had stolen a Nissan Altima sometime around Memorial Day 2001. The Altima was stolen from Cheryl Daly on the Mississippi Gulf Coast. According to Jones, Daly's boyfriend requested that he steal the Altima and dispose of it. Jones testified that he stole the

3

car and drove it to his hometown of Laurel, Mississippi, to hide it. He parked the car in the parking lot of the Masonite Corporation.

¶7. Jones testified that on June 8, 2001, while driving around in his Nissan Maxima, he saw Duncan at a car wash. He had known Duncan for a couple of weeks. Jones had the idea to rob the convenience store to get some money. Subsequently, Jones then testified to the contrary that it was Duncan's idea to rob the convenience store. Jones and Duncan drove to Duncan's home to obtain ski masks and gloves.

¶8. They then drove to the home of Anthony "Hitman" Horne to obtain a .45 caliber handgun. Jones testified that he already had a BB pistol which looked like a 9mm handgun. The two then drove to the parking lot at the Masonite Corporation to retrieve the stolen Altima. Duncan drove the Maxima to Jones's sister-in-law's home and parked it there. Jones followed in the stolen Altima. The two left together in the stolen Altima to rob the convenience store.

¶9. Jones testified that they both entered the store. Jones testified that while he was trying to get the woman off the telephone, he heard two shots fired and saw the man fall to the floor. According to Jones, Duncan told him to get the money. Jones went behind the counter and got the money. They both then exited the store and left in the stolen Altima. After they divided the money taken in the robbery, Jones dropped off Duncan. Jones then poured gasoline in the Altima and set it on fire. He then walked home.

¶10. Horne testified that Duncan told him he shot the man in the convenience store. Horne testified that he had known Duncan for about a year, but he later testified that it was about two

weeks. Horne finally stated that he could not recall how long he had known Duncan. Horne testified that he supplied the .45 caliber handgun.

¶11. Chief Deputy Doug Hill, the lead investigator, testified that the burned Altima was recovered. Inside the Altima, they recovered ski masks and gloves. Many of the hair samples collected did not produce sufficient characteristics in order to be tested. The fingerprints and hair samples that were collected and tested did not match any of the samples obtained from Duncan nor Jones. Samples of fingerprints and hair were collected from Horne, but they were not tested against those recovered. Deputy Hill testified that Jones was 5'6" and weighed over 200 pounds; Duncan was 5'8" and weighed 140 pounds. Deputy Hill testified that Horne was 6'1".

**DISCUSSION**

### I. Re-Indictment

¶12. Duncan received two mistrials based on hung jury's as to the charge of capital murder that was based on Brady's murder during the armed robbery. The State re-indicted Duncan under two counts, murder and armed robbery, arising from the same facts and circumstances. Prior to the third trial, the State made an entry of nolle prosequi as to the original charge which the trial court granted, dismissing the original indictment for capital murder. At trial, Duncan objected claiming that the re-indictment amounted to double jeopardy and violated his right to a speedy trial. The trial court overruled the objection.

¶13. "In regard to any double jeopardy claim, this Court has held that re-indictment for the same offense after an order of nolle prosequi does not bar prosecution." ***Caston v. State***, 823

5

So. 2d 473, 504 (Miss. 2002); *see State v. Shumpert*, 723 So. 2d 1162, 1164 (Miss. 1998) (citing *Beckwith v. State*, 615 So. 2d 1134, 1147 (Miss. 1992)). In *Beckwith*, the "Court has held that following a mistrial declared because of a hung jury, a nolle prosequi entered at the request of the State did not terminate the original jeopardy, and the State was not barred thereafter from seeking the re-indictment of and re-prosecuting the defendant from the same offense." *Beckwith*, 615 So. 2d at 1147 (citing *Smith v. State*, 158 Miss. 355, 359, 128 So. 891, 892 (1930)).

¶14.　In *Smith*, the Court stated:

> The appellant and his wife filed a motion to quash the indictment, setting up that, prior to the finding of the indictment, the appellant was indicted and tried for the murder of Case on an indictment against him alone; that the jury reported to the court that they were unable to agree on a verdict, and were discharged; that thereupon the district attorney entered a nol pros over the protest of the appellant, and a few minutes thereafter the grand jury returned into court the indictment on which the trial here was had. This motion was overruled. At the close of the evidence the court refused a request of the appellant for a directed verdict of not guilty.
>
> ***
>
> The motion to quash the indictment is also wholly without merit, but counsel for the appellant contend that it should be treated as a plea of former jeopardy and sustained as such. Assuming that this can be done, there are two answers to the contention. First, there was no offer of evidence by the appellant, when the case was tried on its merits in support of the allegations of the motion to quash; and, second, under section 22 of the state Constitution "**there must be an actual acquittal or conviction on the merits to bar another prosecution**."

128 So. at 892 (emphasis added).

¶15. Duncan argues that the re-indictment was a substantive change which amounted to two new crimes, not re-indictment. In *Shumpert*, 723 So. 2d at 1167, the Court addressed a similar situation regarding re-indictment. The Court, in its conclusion, addressed the situation where an indictment was dismissed and a defendant was re-indicted *on a separate charge*, stating:

> [U]nder Miss. Code Ann. § 99-17-1, defendants are entitled to a speedy trial within 270 days of the date of arraignment. This Court, however, has held that were [sic] a defendant is re-indicted for the same crime, the 270 day rule does not begin to run until the arraignment on the re-indictment. Furthermore, this Court has stated that even if one views the rule by **dismissing an indictment and re-indicting a defendant** *on a separate charge arising out of the same facts and circumstances*, the Court would reach that issue under the *Barker* balancing test. Analysis under such a test renders the conclusion that the defendants' right to a speedy trial has not been violated.

*Id*. (Emphasis added).

¶16. Accordingly, we find that the trial court did not err in allowing the trial to proceed under the re-indicted charges. This assignment of error is without merit.

## II. Voir Dire

¶17. During voir dire, nineteen potential jurors indicated that they recognized or otherwise were acquainted with the Brady family.[1] That number was reduced to sixteen by the end of voir dire. The defense made a vague request that the trial court strike all sixteen for cause. However, there was a specific request that Jurors 2, 4, 13, 19, 20, 23, and 46 be struck for cause rather than having to exercise a peremptory challenge. The trial court denied the request

---

[1] The record not does provide the jury list in this cause number, 23-22. The jury list was only provided for cause number 22-36 which resulted in two mistrials.

7

based on each of the potential jurors' assurance that they could be fair and impartial. Of the twelve jurors that were actually seated to serve as the jury, only one of those jurors, Juror 32, Rashawanda Blakeney, stated that she knew the family. The record reflects the following transpired when Juror 32 was questioned by the defense during voir dire:

Q:   Who do you know?
A:   Smoky and his wife.
Q:   Smoky and his wife. Is there anything about your knowledge of those people that would bother you one way or the other in this case? Do you think you could be fair and impartial to Mr. Duncan?
A:   Yes.
Q:   Thank you.

No further questions were asked of Juror 32. The defense did not establish how well Juror 32 knew these people, how she knew these people, or how these people were related to the victim. All that the defense's line of questioning established was that Juror 32 could be fair and impartial to Duncan and her knowledge of these people would not affect her decision one way or the other.

¶18. Based on this line of questioning, the defense requested an additional peremptory strike in order to remove Juror 46, the juror that followed Juror 32 on the jury list in order for the defense to exercise a peremptory challenge as to Juror 32. The trial court stated that Juror 32 stated she could be fair and impartial, and the trial court denied the request for the additional peremptory challenge. The following transpired:

Defense:   Your Honor, we ended up with only one person in the box Juror No. 32 that commented she knew the family.
The Court:   Good.

8

| | |
|---|---|
| Defense: | The next one down the list would [be] No. 46. So, I would ask that I be granted one more strike to remove that. . . . I think that is reasonable. |

***

| | |
|---|---|
| State: | Your Honor, Ms. Blakeney said she could be a fair and impartial juror, and in a county like this, you know, people are going to know people. |
| The Court: | It is a rural county, and it's a large family. She said she could be fair, so I'm going to take her at her word. So, your request is denied. |

¶19. On appeal, Duncan argues that the trial court erred in not granting an additional peremptory strike. Duncan relies solely on **Mhoon v. State**, 464 So. 2d 77 (Miss. 1985), as authority. While **Mhoon** provides that a trial judge has the ability to afford counsel additional peremptory challenges, Duncan cites **Mhoon** out of the context in which it was written. Here, the facts of this case in no way compare to the factual situation this Court addressed in **Mhoon**.

¶20. In **Mhoon**, six out of the twelve jurors that served on the jury were either involved in law enforcement or were related by blood or marriage to law enforcement. *Id*. at 80. Twelve of the thirty-nine venire persons were either "policemen or related by blood or marriage to a current or former police officer." *Id*. The jury foreman selected by the twelve jurors, six being law enforcement or related to law enforcement, was an active duty policeman in uniform. *Id*. This Court held that "in the normal case - with a normal distribution of law enforcement officers and their relatives in the jury pool - there is no reason why, if left unchallenged peremptorily, an officer or an officer's relative should not serve on a jury if otherwise qualified to follow the law and the evidence." *Id*. at 81.

9

¶21. The Court in *Mhoon* focused its analysis on the specific factual situation of that case, stating "[t]he composition of the jury in this case reflects a ***most unique and novel group***." (Emphasis added). This Court concluded:

> ***In this particular case***, however, the sheer number of law enforcement-connected persons in the jury pool, ***as well as persons selected as jurors***, has worked a great hardship on Mhoon. ***Given the statistical aberation in the jury pool***, the judge could have done several things to ameliorate its prejudicial effect: (1) ***he could have afforded counsel additional peremptory challenges***, (2) he could have increased the size of the available venire as well as affording additional challenges, or (3) he could have sustained at least some of the challenges for cause.

*Id*. (Emphasis added). However, the Court further held that "[t]his assignment of error raises a novel issue which - were it not for the inordinate abundance of law enforcement persons and their relatives on the jury list in this case - would have little merit." *Id*. As the Court is not faced with a similar situation involving law enforcement officers in this case, we do not find *Mhoon* helpful in resolving this case. *See **Le v. State***, 913 So. 2d 913, 924 (Miss. 2005); *see also **Brown v. State***, 890 So. 2d 901, 908 (Miss. 2004).[2] Here, the facts of this case fall woefully short of the factual situation addressed by this Court in *Mhoon* as novel and unique.

¶22. As *Mhoon* is inapplicable to this case, we now examine the trial court's decision to allow Juror 32 to serve on the jury. When reviewing the trial court's decision whether to excuse a potential juror, the Court affords the trial court wide latitude in its decision. *Caston*,

---

[2] In *Le*, the Court addressed a juror that was a member of law enforcement that served on the jury. 913 So. 2d at 923. Similarly in *Brown,* the Court addressed a juror that had a connection to law enforcement. 890 So. 2d at 908.

823 So. 2d at 499; *see* ***Poe v. State***, 739 So. 2d 405, 409 (Miss. Ct. App. 1999). "It is well founded that the trial judge has the discretion to excuse potential jurors for cause if the court believes the juror could not try the case impartially." ***Burt v. State***, 493 So. 2d 1325, 1327 (Miss. 1987). As such, the trial court is empowered with broad discretion to determine whether a prospective juror can be impartial - notwithstanding the juror's admission under oath as to his or her ability to impartial. ***Caston***, 823 So. 2d at 499.

¶23. In ***Scott v. Ball***, 595 So. 2d 848, 850 (Miss. 1992), this Court held that "varied imponderables make the selection of a jury a judgment call peculiarly within the providence of the circuit judge, and one we will not on appeal second guess in the absence of a record showing a clear abuse of discretion." The Court listed some of those "varied imponderables," stating:

> To the extent that any juror, ***because of his relationship to one of the parties***, his occupation, his past experience, or whatever, would normally lean in favor of one of the parties, or be biased against the other, or one's claim or the other's defense in the lawsuit, to this extent, of course, his ability to be fair and impartial is impaired. It should also be borne in mind that ***jurors take their oaths and responsibilities seriously***, and when a prospective juror assures the court that, despite the circumstance that raises some question as to his qualification, this will not affect his verdict, ***this promise is entitled to considerable deference***. ***Harding v. Estate of Harding***, 185 So. 2d 452, 456 (Miss. 1966); ***Howell v. State***, 107 Miss. 568, 573, 65 So. 641, 642 (1914).

***Scott***, 595 So. 2d at 850 (emphasis added).

¶24. Nothing presented by Duncan demonstrates that the trial court erred in taking Juror 32 at her word under oath that she could be fair and impartial. Based on the record and this

11

Court's precedent, we find that the trial court did not err in allowing Juror 32 to serve on the jury. This assignment of error is without merit.

### III.    Jury Instructions

¶25.    Duncan argues that the trial court erred by granting jury instructions S-5 and S-6. Jury instruction S-5 is an armed robbery element instruction given by the trial court which stated[3]:

> The Court instructs the jury that Jonathan Duncan has been charged with the felony crime of armed robbery in Count II of the indictment.   If you find from the evidence in this case beyond a reasonable doubt that:
>
> 1)    the defendant, Jonathan Duncan, acting alone or in conjunction with another, did then and there willfully, unlawfully[,] and feloniously take personal property from the presence of Linda Rayner, to-wit: approximately $840.00 in U.S. currency belonging to James Brady and Brady's Country Store, and;
>
> 2)    that said taking was against her will by putting her in fear of immediate injury to her person by the exhibition of a deadly weapon, to-wit: a gun;
>
> then under your sworn duty you shall find the defendant, Jonathan Duncan, guilty of armed robbery in Count II of the indictment.

---

[3]    Duncan briefly states that the language of jury instruction S-5 did not exactly track the language of the indictment word for word, especially the language "acting alone or in conjunction with another."    However, Duncan does not present any authority on appeal regarding the language of jury instruction S-5, and as such, is now procedurally barred on appellate review on this instruction.   This Court has expressly stated that "[i]t is the duty of an appellant to provide authority in support of an assignment of error."    *Jones v. Howell*, 827 So. 2d 691, 702 (Miss. 2002).    Where an assertion of error is not supported by authority, that assertion is deemed abandoned.    *Id.*; *see Alexander v. Womack*, 857 So. 2d 59, 62 (Miss. 2003) (unsupported assertions on appeal are procedurally barred); *see also Webb v. De Soto County*, 843 So. 2d 682, 685 (Miss. 2003).

¶26. Jury instruction S-6 is the aiding and abetting instruction given by the trial court which stated:

> The Court instructs the jury that the guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by the person through the direction of another person as his or her agent, by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.
>
> If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts or conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.
>
> Before the defendant may be held criminally responsible for the acts of others[,] it is necessary that the accused deliberately associate[s] himself in some way with the crime and participate[s] in it with the intent to bring about the crime.
>
> Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant whether [sic] directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.
>
> In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission with the intent to violate the law.

¶27. Duncan contends that jury instruction S-6 gave the jury the false impression that it could find Duncan guilty of armed robbery if he committed only one of the elements of the crime. Duncan relies on *Berry v. State*, 728 So. 2d 568 (Miss. 1999), as authority on appeal to support his contention that jury instruction S-6 should not have been granted.

13

¶28.   In ***Berry***, the Court held that "the problem with the offending instruction is that it appears to give the jury an additional option of finding the defendant guilty if she committed only one element of the crime without even finding that the crime was ever completed." 728 So. 2d at 571.   Berry argued on appeal to this Court that the jury instruction was insufficient in that it did not require the jury to find that the crime was actually completed. ***Id***. Berry also asserted that the jury instruction relieved the State of its burden to prove every element of the crime beyond a reasonable doubt. ***Id***.   The instruction the Court reviewed in ***Berry*** stated:

> The Court instructs the jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing any act which is an element of the crime, or immediately connected with it, or leading to its commission, is a principal.
>
> One who aids, assists and encourages a transfer of cocaine is a principal and not an accessory, and his guilt in nowise depends upon the guilt or innocence, the conviction or acquittal of any other alleged participant in the crime.   Therefore if you believe from the evidence, beyond a reasonable doubt, that Merlinda Berry did willfully, unlawfully and feloniously do any act which is an element of the crime of transfer of cocaine, as defined by the Court's instructions, or immediately connected with it, or leading to its commission, then and in that event, you should find Merlinda Berry guilty of transfer of cocaine as charged in the indictment.

***Id***. at 570 (emphasis added).   Here, we do not have a similar jury instruction as the Court considered in ***Berry***.   As such, ***Berry*** does not assist this Court in our review.

¶29.   In ***Milano v. State***, 790 So. 2d 179, 185 (Miss. 2001) this Court, itself, provided the following ***sample jury instruction*** from the federal model jury instructions which is identical to the jury instruction given in this case:

14

The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through the direction of another person as his or her agent, by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.

If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.

Before any defendant may be held criminally responsible for the acts of others it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.

Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.

In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission with the intent to violate the law.

Fifth Cir. Pattern Jury Instructions (Criminal) 2.06 (Aiding and Abetting) (Agency) (1998).

The Court stated: "To avoid any further confusion, today, we prospectively adopt the Fifth Circuit's Pattern Jury Instruction on Aiding and Abetting due to continuing litigation and confusion over this issue. *The use of this instruction should cure future problems regarding this issue*." *Milano*, 790 So. 2d at 185 (emphasis added).

15

¶30. Here, the trial court gave the jury instruction approved by this Court in *Milano* for aiding and abetting. Accordingly, the trial court did not err in giving jury instruction S-6. This assignment of error is without merit.

**IV.    Bifurcated Trial**

¶31. On appeal, Duncan argues that the trial court erred by not ordering a bifurcated sentencing hearing on the armed robbery. The jury fixed the sentence at life imprisonment for the armed robbery conviction. Duncan states on appeal that his research on this issue did not produce any case directly on point to support his position.

¶32. Miss. Code Ann. § 97-3-79 provides:

> Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, *shall be imprisoned for life* in the state penitentiary *if the penalty is so fixed by the jury*; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.

(Emphasis added). Strictly construing the criminal statute at issue, Miss. Code Ann. § 97-3-79, provides that it is within the jury's discretion to fix the sentence for armed robbery at life imprisonment. Rule 10.04(B) of the Uniform Rules of Circuit and County Court Practice clearly states that the decision whether or not to order a bifurcated trial rests within the trial court's discretion in its use of the discretionary word "may." Rule 10.04(B) provides:

> In all cases not involving the death penalty, wherein the jury may impose life sentence, **the court *may conduct* a bifurcated trial**. If the defendant is found guilty of an offense for which life imprisonment may be imposed, a sentencing

16

trial shall be held before the same jury, if possible, or before the court if jury waiver is allowed by the court.

U.C.C.C.R. 10.04(B). (Emphasis added). *See Stevens v. State,* 840 So. 2d 785, 787 (Miss. Ct. App. 2003) (addressing the issue of a bifurcated hearing in an armed robbery case and holding no separate hearing was needed.). However, if the trial court does conduct a bifurcated trial, then the sentencing trial shall be held before the same jury, if possible. U.C.C.C.R. 10.04(B). This assignment of error is without merit.

### V.    J.N.O.V.

¶33.    Duncan made a post-trial motion for J.N.O.V.[4]   The trial court subsequently entered its order denying Duncan's motion for J.N.O.V.

¶34.    A motion for J.N.O.V. challenges the legal sufficiency of the evidence. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). "[T]his Court properly reviews the ruling on the last occasion the challenge was made in the trial court." *Id*. at 778. Here, this occurred when the trial court denied Duncan's motion for J.N.O.V.

¶35.    Duncan argues that the inconsistency in the witnesses' testimony required the trial court to grant J.N.O.V. However, inconsistencies in witnesses' testimony do not require the jury to reject the entire testimony. *Kinney v. State*, 336 So. 2d 493, 497 (Miss. 1976). "[I]nconsistencies are neither unusual nor grounds for the jury to reject all of their testimony."

---

[4]   Duncan was convicted of Count II: armed robbery. The jury, however, did not convict Duncan of Count I: murder. As such, only the armed robbery is the subject of the J.N.O.V. review.

*Id*. "Where there is conflicting testimony, the jury is the judge of the credibility of the witnessed." *Wetz v. State*, 503 So. 2d 803, 812 (Miss. 1987).

¶36. In *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005), this Court set out the standard of review for legal sufficiency as follows:

> In *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968), we stated that in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction."

The Court stated:

> Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render. *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985) (citing *May v. State*, 460 So. 2d 778, 781 (Miss. 1984)); see also *Dycus v. State*, 875 So. 2d 140, 164 (Miss. 2004). However, if a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. *Edwards*, 469 So. 2d at 70.

*Bush v. State*, 895 So. 2d at 843.

¶37. Duncan argues that the facts of the case did not support an armed robbery conviction. However, a review of the record disputes that assertion and demonstrates that the elements of armed robbery as defined in Miss. Code Ann. § 97-3-79 were satisfied. Rayner testified that two black males wearing ski masks and gloves and brandishing pistols entered Brady's Country

18

Store on or about June 8, 2001. The men pointed their guns at Rayner and Rayner's brother, Brady, and ordered them to hand over the money. Brady was shot and killed during the robbery. One of the two men took approximately $840 in cash that belonged to Brady and the store from Rayner. Rayner testified that she feared for her life during the robbery, and she was hysterical after seeing her brother shot and fall to the floor. The two men left the store with the money.

¶38. Jones testified that he and Duncan were the two men that robbed the convenience store. Jones testified that they wore ski masks and gloves that they obtained from Jones's home and used a .45 caliber handgun and a BB gun that looked like a 9mm handgun. The .45 caliber handgun was obtained from Horne. Jones stated that he was the one that went behind the counter and took the money from Rayner after Duncan shot Brady. Jones testified that after they divided the money, Jones burned the stolen Nissan Altima they used in the robbery. There was discrepancy in Jones's testimony as whether it was Jones's or Duncan's idea to rob the convenience store.

¶39. Horne testified that Duncan told him he had shot the man in the convenience store. Horne had supplied the .45 caliber handgun used in the robbery. There was discrepancy in Horne's testimony as to how long he had known Duncan.

¶40. Despite discrepancies in the witnesses' testimony, the jury was left the responsibility to weigh the credibility of these witnesses' testimony at trial. As this Court has repeatedly held, the jury is the final arbiter of a witness's credibility. *Morgan v. State*, 681 So. 2d 82, 93 (Miss. 1996); *see also Spicer v. State*, 921 So. 2d 292, 312 (Miss. 2006). In *Spicer v. State*,

19

921 So. 2d at 311 (quoting *Franklin v. State*, 676 So. 2d 287, 288 (Miss. 1996)), this Court stated:

> Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. [This Court] may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

¶41. Considering the evidence in the light most favorable to the State, we find there was sufficient evidence to convict Duncan of armed robbery. Accordingly, we find the trial court did not err in denying Duncan's motion for J.N.O.V. This assignment of error is without merit.

## VI. Rights of Defendants

¶42. In Duncan's brief on appeal, he states, "Mississippi law states that Judges have a duty to protect the rights of defendants even if no objections are made," and he cites to *Livingston v. State*, 525 So. 2d 1300 (Miss. 1988), quoting a passage from the Court's opinion. Nothing else is stated by Duncan in this assignment of error. Duncan makes absolutely no attempt to point the Court in the direction of any alleged rights that were violated. Likewise, Duncan does not provide any analysis of whether the rights that were allegedly violated constituted constitutional rights, or fundamental rights, to qualify as an exception to the rule that objections must be first raised in the trial court to avail themselves of appellate review.

¶43. Duncan neither sets forth any argument nor provides us with any clues as to the relevance of the cited case. This Court has repeatedly held that where the appellant provides no meaningful argument in support of an assignment of error raised, the issue is waived on appeal. *See King v. State*, 857 So. 2d 702, 716 (Miss. 2003); *Jones v. State*, 841 So. 2d 115,

20

138 (Miss. 2003); *see also* **Clay v. State**, 881 So. 2d 323, 329 (Miss. Ct. App. 2004). As there is no assignment of error or meaningful argument raised by Duncan for this Court to review, we deem Duncan's issue waived on appeal.

### VII. Cumulative Error

¶44. Duncan argues that the cumulative effect of the errors in his trial warrant reversal. In **Wilburn v. State**, 608 So. 2d 702, 705 (Miss. 1992), this Court held that "individual errors, not reversible in themselves, may combine with other errors to make up reversible error." The question that must be asked in these instances is whether the defendant was deprived of a "fundamentally fair and impartial trial" as a results of the cumulative effect of all errors at trial. *Id*. If there is "no reversible error in any part, so there is no reversible error to the whole." **McFee v. State**, 511 So. 2d 130, 136 (Miss. 1987).

¶45. In this assignment of error Duncan does not specify or point to any "cumulative error" that merits reversal. As such, we must look to the issues previously addressed. None of those issues previously raised by Duncan, rise to the level of reversible error either standing alone or when considered together. The verdict is supported by substantial evidence, and Duncan fails to demonstrate any procedural or substantive errors that warrant reversal. Based on the finding of no error, we find that there is no cumulative effect of any alleged error that merits reversal. This assignment of error is without merit.

### CONCLUSION

21

¶46. For the foregoing reasons, the judgment of the Circuit Court of the Second District of Jasper County, Mississippi, is affirmed.

¶47. **CONVICTION OF ARMED ROBBERY IN COUNT II AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

   **SMITH, C.J., WALLER AND COBB, P.JJ., DIAZ, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.**