# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-KA-01311-SCT

**EDDIE MINOR, III a/k/a EDDIE MINOR a/k/a**
**EDDIE LEE MINOR, JR. a/k/a EDDIE MINOR, JR.**

***v.***

**STATE OF MISSISSIPPI**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/15/2016 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON, JR. |
| TRIAL COURT ATTORNEYS: | RONNIE LEE HARPER |
| | TIM COTTON |
| | CARMEN N. BROOKS |
| | SHAMECA SHANTE' COLLINS |
| | LARRY STAMPS |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | PHILLIP BROADHEAD |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | RONNIE LEE HARPER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/30/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**KING, JUSTICE, FOR THE COURT:**

¶1. Eddie Minor was convicted of armed robbery in the Circuit Court of Adams County and sentenced to serve a term of thirty-five years in the custody of the Mississippi Department of Corrections (MDOC). Minor now appeals his conviction, arguing both that the evidence was legally insufficient to support his conviction and that the jury's verdict was

contrary to the overwhelming weight of the evidence. Finding no merit in his appeal, we affirm the judgment of the circuit court.

## FACTS AND PROCEDURAL HISTORY

¶2.     On December 29, 2014, in Natchez, Mississippi, sixteen-year-old Jessie Elbert Taylor Jr. was fatally shot in the back. Officer Paulesha McBride, with the Natchez Police Department, was dispatched to the Beaumont Street area at around 9:00 p.m. that night.[1] She arrived first on the scene and observed Taylor lying in the street. She testified that Taylor had been conscious, and that she had asked him what had happened. Taylor stated that "he had been robbed by two black males." Taylor told her that the two males had asked for everything in his pocket. He told them that he did not have anything, and the males pulled out guns and started shooting. Taylor stated that he then turned and started running down the street.

¶3.     Investigator Otis Mazique, with the Natchez Police Department, testified that when he arrived at the scene shortly afterward, he observed Taylor lying in the street.[2] Taylor had been talking, stating that two males had robbed him and had shot at him. He corroborated Officer McBride's testimony that Taylor had said that the two males had told him to empty his pockets. Investigator Mazique leaned down and asked Taylor to identify the two males but Taylor had passed out and did not respond. Taylor never regained consciousness.

---

[1]Officer McBride no longer works for the Natchez Police Department.

[2]Investigator Mazique also is a former employee of the Natchez Police Department.

¶4.	A total of eight casings was found at the scene. Investigator Mazique testified that a single nine-millimeter casing had been found at the beginning of Beaumont Street, near Woodlawn Avenue. At the corner of Beaumont Street and Wallace Court, a small alley off Beaumont, seven nine-millimeter bullet casings were recovered. All seven of those casings were of the same type.

¶5.	Officer McBride got word that Taylor had thrown a gun across the fence. The police department recovered an automatic Lorcin .380 pistol around twenty to thirty feet from Taylor.[3] The Lorcin pistol had a .380 caliber bullet in it as well as a nine millimeter bullet. The nine-millimeter bullet fit the description of the single, nine-millimeter casing found at the corner of Beaumont and Woodlawn. Both had a red ring around the firing hole. Carl Fullilove, a forensic scientist with the Mississippi Forensics Laboratory, testified that the seven casings found together were shorter than the single, nine-millimeter cartridge that was found by itself. The only bullet that could have been fired from the .380 gun that Taylor supposedly had fired was the shorter bullet found by itself.

¶6.	Dr. Mark LeVaughn, chief medical examiner for the State of Mississippi, listed Taylor's manner of death as homicide by multiple gunshot wounds. Taylor had two gunshot wounds, both entering through the back. The bullet recovered from Taylor's abdomen was a .38 caliber bullet. Fullilove testified that it could have been fired from the same nine-millimeter that had fired the seven cartridge casings found together.

---

[3]The .380 was an automatic pistol which when fired would kick the shell out.

¶7.     Witnesses on the street identified then eighteen-year-old Minor, Emanuel "Little Carl" Latham, and Tyrone Noble as being involved in the shooting.[4] The next day, Investigator Mazique brought Minor into the station and read him his *Miranda* rights.[5] Minor refused to sign the *Miranda* form. Minor stated that he had been at home that night. He then put his head between his legs and did not say anything else.

¶8.     Latham, fifteen years old at the time, waived his *Miranda* rights and gave oral and written statements.[6] Latham also testified at Minor's trial. Latham stated that he had been with his cousin earlier that night when Minor had called him. After the call, Latham's cousin dropped him off at 27 Beaumont Street. Keterria Noble, Tyrone Noble's cousin, and Minor already were at the house when he arrived.[7] A few minutes later, Taylor arrived on his bicycle. Latham testified that Taylor had asked Minor for synthetic marijuana. Latham, Minor, and Taylor then walked down the street to 35 Beaumont Street, allegedly to obtain the marijuana.[8] Minor instructed Taylor to stay outside on the porch. After Latham and Minor went into the house, Minor instructed Latham to stay in the living room. Latham stated that

---

[4]Investigator Mazique testified that he questioned Noble and that Noble stated he had shot a .380 pistol that night, once in the air. However, after searching Noble's house, police ruled him out as a suspect.

[5]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[6]The written statement was not entered into the record.

[7]Keterria also is referred to as Tyrone's sister in the record. Throughout the record she is referred to as "Katie" and "Kate."

[8]Thirty-five Beaumont Street was referred to in the record as "Steve's house."

Minor returned with two guns. Minor kept one gun and handed the other to Latham. Latham testified that he had received an automatic pistol while Minor had kept an all-black revolver. Latham asked Minor what Minor wanted Latham to do with the gun. Minor replied that Latham was to "just do what he do."

¶9.     The two walked outside to meet Taylor. Latham stated that Minor then pulled out his gun and told Taylor to "give him everything." Taylor handed Minor the money that had been in his pocket and attempted to walk away. Latham testified that Minor grabbed Taylor by the back of his shirt and told him that he wanted the gun that was on his side. Minor then reached for Taylor's gun but was unable to retrieve it. Next, Latham testified:

> After he reached for the gun, Jessie Taylor knocked his hand down. He got into a little tussle. Eddie Minor pushed Jessie up off of him. . . . After he pushed him up off him, Jessie Taylor turned around and started to walk off real fast. Eddie Minor fired the shot behind his leg like on the ground.

When Minor fired the shot, Taylor had started to run. Latham testified that when Taylor started to run, "he tried to pull his gun, but it looked like to me – to me it looked like it was stuck between his waist and his side." Latham stated that Minor fired another shot and that Taylor grabbed his backside as if he had been shot. Taylor was able to retrieve his gun and fire a shot backward without turning around. Latham said that it had sounded like the bullet had come close to his head. The shot had scared him, and Latham testified that he then began shooting until he emptied the gun's magazine.

¶10.    The prosecutor asked what, if anything, Minor had been doing while Latham was shooting. Latham replied:

Well, when I was shooting, he was shooting too, but the way he was shooting is different from me. He shoot, and when his hand come up, he'll wait until it come back down and shoot again.

The two had been standing at the corner of Beaumont and Wallace Court. Latham took off running down Wallace Court to a pathway that led to the main street, Martin Luther King. A few seconds later, Minor came out behind him. Minor called Latham's name and suggested that the two walk back to Beaumont Street. As they were walking, Minor requested that Latham return the gun that he had given him. Latham stated that people had been in front of 35 Beaumont and that Taylor's bike had been laying in the middle of Beaumont Street. Minor told him to ride the bike home. Latham stated that he picked up the bike but then told Minor that he did not want it and laid it back down. When police lights became visible at the end of Beaumont Street, everybody began running. Latham testified that he ran behind Noble's house, jumped the gate, and then hid under the house until things got quiet. On cross-examination, Latham testified that he had known Taylor and that they had been friends from school.

¶11. Keterria testified to a slightly different version of events. She did not see Minor with a gun that night. She testified that on the evening of December 29, 2014, she had been outside her house with Minor and several friends. She testified that Latham had arrived and then, around fifteen to twenty minutes later, Taylor had walked up the street. Keterria went inside the house for a few minutes. Keterria stated that when she returned outside, Minor had been walking toward 35 Beaumont Street, and Latham had been walking a short distance

6

behind him. Minor turned around and told Taylor to come with him. Taylor then began to walk down the street with Minor and Latham. Keterria testified that no one else had been with them. She stated that she thought they had gone into the alley next to 35 Beaumont Street. Twenty minutes later, she heard the first gunshot. Keterria saw Taylor run out of the alley with a limp "like he was shot in the leg." Latham then came out of the alley and started shooting at Taylor. She testified that, at that point, Taylor turned around and shot one time and then kept running.

¶12.    Keterria testified that after the shooting stopped, she saw Latham coming up the street with Taylor's bike. She stated that Latham dropped the bike and ran when he saw the police lights. Minor had been coming from the alley but was not close to Latham. She did not observe anybody else coming down the street and did not see Minor with a gun at the time.

¶13.    Minor and Latham were jointly indicted on March 23, 2015, on two counts: (1) armed robbery; and (2) murder. On November 23, 2015, the trial court declared a mistrial in Minor's first trial after the jury announced a deadlock.

¶14.    Minor's second trial ensued, and a Circuit Court of Adams County jury convicted Minor of armed robbery on August 12, 2016. The jury remained undecided on the murder charge, and the trial court declared a mistrial on that charge. The trial court sentenced Minor to thirty-five years to serve in the Mississippi Department of Corrections for the armed-robbery charge. The State then entered a *nolle prosequi* regarding the murder charge.

¶15.    Minor now appeals and challenges the weight and sufficiency of the State's evidence.

**ANALYSIS**

¶16.    Minor was convicted of armed robbery pursuant to Mississippi Code Section 97-3-79, which reads:

> Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery . . . .

Miss. Code Ann. § 97-3-79 (Rev. 2014).

**I.      Sufficiency of the Evidence**

¶17.    When reviewing the legal sufficiency of the evidence, this Court must determine whether the evidence shows "'beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.'" **Bush v. State**, 895 So. 2d 836, 843 (Miss. 2005), *abrogated in part by* **Little v. State**, No. 2014-CT-01505-SCT, 2017 WL 4546740, at *3 (Miss. Oct. 12, 2017), (quoting **Carr v. State**, 208 So. 2d 886, 889 (Miss. 1968)). The relevant question is whether, when "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." **Id.** (quoting **Jackson v. Virginia**, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The evidence is sufficient even when reasonable, fair-minded individuals might reach different conclusions on every element of the offense. **Id.** (citations omitted).

8

¶18. This Court previously has held that a defendant may be found guilty even on the uncorroborated testimony of a single witness. *Graves v. State*, 216 So. 3d 1152, 1161 (Miss. 2016). Here, Latham testified that Minor had retrieved the guns and had instigated the robbery. Latham also testified that Minor, armed with an all-black revolver, had pointed the gun at Taylor and demanded everything in his pocket, as well as demanding Taylor's gun. While the testimony of an accomplice "must be viewed with 'great caution and suspicion,'" even uncorroborated accomplice testimony, as long as it is not unreasonable, improbable, self-contradictory, or substantially impeached, is sufficient. *Johns v. State*, 592 So. 2d 86, 89 (Miss. 1991).

¶19. However, Latham's testimony was not uncorroborated. This Court also has held that "[o]nly slight corroboration of an accomplice's testimony is required to sustain a conviction." *Jones v. State*, 203 So. 3d 600, 606 (Miss. 2016). In addition to Latham's testimony, Officer McBride testified that, as Taylor lay dying, he accused *two* males of robbing and shooting at him. Investigator Mazique confirmed that testimony and stated that Taylor had said that two males had robbed and shot at him. Moreover, Keterria testified that she had heard Minor ask Taylor to follow him down Beaumont Street, and that Minor and Latham had been the only ones with Taylor prior to when she heard the first gunshot. And Keterria testified that she had seen Minor walk out of the alley that Taylor and Latham had walked out of after Latham had finished shooting.

9

¶20.    Although Minor argues that critical facts were directly contradicted in this case, we find any inconsistencies in testimony insufficient to warrant a reversal of Minor's conviction. "[I]nconsistencies in witnesses' testimony do not require the jury to reject the entire testimony." *Duncan v. State*, 939 So. 2d 772, 782 (Miss. 2006). It is the function of the jury to pass upon the credibility of the witnesses and resolve the issues. *Clanton v. State*, 279 So. 2d 599, 601 (Miss. 1973); *see also* *Cousar v. State*, 855 So. 2d 993, 999 (Miss. 2003) ("The credibility of witnesses and responsibility for weighing and considering conflicting evidence is for the jury, not the reviewing court.").

¶21.    When viewing the evidence in the light most favorable to the guilty verdict, a rational juror could find beyond a reasonable doubt that Minor had committed armed robbery. Therefore, the evidence was not insufficient in this case.

## II.    Weight of the Evidence

¶22.    In the alternative, Minor contends that the jury's verdict was against the overwhelming weight of the evidence. "In reviewing the denial of a motion for a new trial 'based on an objection to the weight of the evidence,' this Court 'will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" *Kirk v. State*, 160 So. 3d 685, 697 (Miss. 2015), *reh'g denied* (April 23, 2015) (quoting *Bush*, 895 So. 2d at 844). "This occurs only if reasonable men could not have found the defendant guilty based on the evidence when it

is viewed in the light most favorable to the verdict." ***Cotton v. State***, 144 So. 3d 137, 142 (Miss. 2014) (citations omitted).

¶23. Minor argues that Latham's version of the events was unconvincing and directly contradictory. However, based on the facts previously stated, we find that Minor's armed-robbery conviction was not against the overwhelming weight of the evidence. Minor next refers to the "bizarre compromised verdict" and argues that, if Latham's testimony was sufficient to establish armed robbery, then the jury also should have believed his testimony enough to support a murder conviction. Minor's argument is flawed. Latham admittedly emptied his magazine while firing at Taylor. Thus, the jury could have believed that Latham, in fact, dealt the fatal blow to Taylor instead of Minor.

¶24. Accordingly, because the jury's verdict in this case was not so against the overwhelming weight of the evidence as to require reversal, we find this issue to be without merit.

## CONCLUSION

¶25. Because the evidence sufficiently supported Minor's conviction and because the verdict was not against the overwhelming weight of the evidence, we affirm Minor's conviction of armed robbery.

¶26. **AFFIRMED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.**