# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01330-COA

**MAGED MUTHANNA SALEH QASOON A/K/A**
**MIKE A/K/A MAJED KASSOM A/K/A MAGED**
**QASOON A/K/A MAGEED QUASOON**

**APPELLANT**

v.

**STATE OF MISSISSIPPI**

**APPELLEE**

DATE OF JUDGMENT:                08/31/2016
TRIAL JUDGE:                     HON. JUSTIN MILLER COBB
COURT FROM WHICH APPEALED:       LAUDERDALE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          P. SHAWN HARRIS
ATTORNEY FOR APPELLEE:           OFFICE OF THE ATTORNEY GENERAL
                                 BY: ABBIE EASON KOONCE
DISTRICT ATTORNEY:               BILBO MITCHELL
NATURE OF THE CASE:              CRIMINAL - FELONY
DISPOSITION:                     AFFIRMED: 12/12/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., BARNES AND FAIR, JJ.

### FAIR, J., FOR THE COURT:

¶1.     Maged Qasoon was captured on video selling eight grams of synthetic marijuana or

"spice" to a confidential informant.  Qasoon's defense at trial was essentially that he did not

know the substance he was selling was illegal.  On appeal, he focuses on the specific

language of his indictment, which described his offense as "sale of AB-FUBINACA," and

on the testimony at trial establishing only that the substance Qasoon sold was AB-

FUBINACA "or a related isomer."  Because these contentions are made for the first time on

appeal, the record is largely undeveloped, but to the extent that the issues are preserved, we

find them to be without merit.

## DISCUSSION

### 1. Unconstitutionally Vague Statute

¶2. In his first issue, Qasoon alleges that Mississippi's schedule of controlled substances is unconstitutionally vague. This issue is raised for the first time on appeal, and would ordinarily be barred for that reason. But in *Fulgham v. State*, 47 So. 3d 698, 700 (¶6) (Miss. 2010), a four-justice plurality held that vagueness claims are exempt from procedural bars, and the other two opinions in the case, comprising the remainder of the court, assumed the same result. Therefore, this issue may be raised for the first time on appeal.

¶3. However, Qasoon fails to adequately raise the issue. He does not support this argument with any relevant authority concerning the void-for-vagueness doctrine, nor does he frame his argument according to the vagueness test followed by Mississippi courts. *See, e.g.*, *Nolan v. State*, 182 So. 3d 484, 492 (¶¶28-31) (Miss. Ct. App. 2016). The failure to cite and employ relevant authority waives this issue on appeal, irrespective of whether the claim would ordinarily be excepted from procedural bars. *See, e.g., Duncan v. State*, 939 So. 2d 772, 779 n.3 (Miss. 2006) ("Where an assertion of error is not supported by authority, that assertion is deemed abandoned.").

¶4. Notwithstanding that the issue has been waived, Qasoon's contentions are without merit. The challenged statute does not affect a constitutional right, and therefore our analysis would begin by "applying the statute to the complainant's conduct before considering any

hypothetical scenarios." *Nolan*, 182 So. 3d at 492 (¶31).  Qasoon's challenge is purely hypothetical: he alleges that since our statute controls isomers[1] of specifically listed substances, and since isomers do not necessarily have the same or similar chemical properties to the listed compounds, it is theoretically possible for inert or benign substances to be controlled.  Qasoon contends that the statute is unconstitutionally vague because a reasonable person might not intuitively expect such compounds to be controlled, nor would he have the means to verify compliance with the statute.

¶5.    Setting aside the question of whether that would actually make the statute unconstitutionally vague, there is no reason to think anything like Qasoon's hypothetical actually happened here.  It is true that the lab technician who analyzed the substance could only say that it was "AB-FUBINACA or a related isomer," but nothing suggested that the substance was innocuous.  It was referred to as "spice" and offered as a substitute for marijuana.  The active ingredient had been laced on plant material, mimicking the appearance of marijuana.  It was sold for a large amount of money ($200 for eight grams), and the exchange was made in a parking lot approximately two miles from the convenience store owned by Qasoon's father, where Qasoon worked and, according to his defense, sold legal marijuana substitutes.  In the recording of the sale, Qasoon boasted of the substance's psychoactive potency; he said it was better than marijuana and what was sold at his store,

---

[1] "Isomers are two or more compounds which have the same molecular formula but different molecular structures.  The variations in structure may give rise to different chemical characteristics."  *United States v. Hall*, 552 F.2d 273, 274 (9th Cir. 1977).

cautioned against smoking it too quickly, and even claimed it had been tested by a medical professional.

¶6.     This issue is waived and without merit.

## 2.     Sufficiency of Indictment

¶7.     Qasoon next contends that his indictment was insufficient because it alleged possession of "AB-FUBINACA," rather than the chemical description applicable to the compound given in Schedule I of the Mississippi Uniform Controlled Substances Law.

¶8.     Qasoon's indictment alleged that, in relevant part, he:

> did willingly, unlawfully, and feloniously and knowingly sell, barter, transfer, distribute or dispense approximately 7.90 gram(s) of AB-FUBINACA, a Schedule I controlled substance . . . , in violation of Section[s] 41-29-139 [and] 41-29-113(c)(L)[2] of the Mississippi Code . . . .

¶9.     Qasoon did not challenge the sufficiency of his indictment at trial. While it is true that "[c]hallenges to the substantive sufficiency of an indictment may not be waived and consequently may be raised for the first time on appeal," this does not include all challenges to an indictment. *See Ross v. State*, 954 So. 2d 968, 1015 (¶126) (Miss. 2007). Nonjurisdictional defects in the indictment may not be attacked for the first time on appeal absent a showing of cause and actual prejudice. *Crawford v. State*, 716 So. 2d 1028, 1050-51 (¶82) (Miss. 1998) (superceded by rule on other grounds, as recognized by *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 39 (¶22) (Miss. 2003)). Mississippi law recognizes

---

[2] This is apparently a scrivener's error, as the actual subsection is 41-29-113(c)(55)(L).

only two such jurisdictional defects: where the "indictment fails to charge a necessary element of a crime or if there exists no subject matter jurisdiction." *Banana v. State*, 635 So. 2d 851, 853 (Miss. 1994); *see also Brown v. State*, 37 So. 3d 1205, 1209-10 (¶9) (Miss. Ct. App. 2009).

¶10. Qasoon contends that the indictment "is insufficient because it fails to sufficiently charge the defendant with notice of what substance he is charged with possessing." He bases this on two points: the use of the name "AB-FUBINACA" rather than the description used in the statute, which is rather dense,[3] and the fact that the indictment alleged transfer of AB-FUBINACA rather than AB-FUBINACA *or a related isomer* as the proof showed.

¶11. Both of these challenges are barred on appeal. An indictment that uses a code or trade name for a controlled substance rather than a chemical description does not fail to allege an

---

[3] The statute reads in relevant part:

(55) Synthetic cannabinoids. Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of a synthetic cannabinoid found in any of the following chemical groups, whether or not substituted to any extent, or any of those groups which contain any synthetic cannabinoid salts, isomers, or salts of isomers, whenever the existence of such salts, isomers, or salts of isomers is possible within the specific chemical designation, including all synthetic cannabinoid chemical analogues in such groups: . . . (L) 3-carboxamide-1H-indazoles, whether or not substituted in the indazole ring to any extent and substituted to any degree on the carboxamide nitrogen and 3-carboxamide-1H-indoles, whether or not substituted in the indole ring to any extent and substituted to any degree on the carboxamide nitrogen[.]

Miss. Code Ann. § 41-29-113(c)(55)(L) (Supp. 2016).

essential element; "[e]quivalent words of substantially the same meaning as those of the statute may be substituted." *Gilmer v. State*, 955 So. 2d 829, 837 (¶26) (Miss. 2007). AB-FUBINACA is apparently a "code name" for a specific synthetic cannabinoid, derived loosely from its chemical formula. The name appears to be in rather widespread use; the drug was temporarily placed into the federal controlled substances Schedule I by that name in February 2014. *See* 79 Fed. Reg. 7577-01 (Feb. 10, 2014). Grady Downey, a forensic scientist with the Mississippi Crime Laboratory, testified that AB-FUBINACA is not specifically listed in Schedule I of the Mississippi Uniform Controlled Substances Law, but it is prohibited because it is a "compound which has a skeletal molecular structure which is composed of an indazole carboxamide compound." *See* Miss. Code Ann. § 41-29-113(c)(55)(L) (Supp. 2016).

¶12. Moreover, "[t]he purpose of the indictment is to provide the accused reasonable notice of the charges against him so that he may prepare an adequate defense." *Warren v. State*, 187 So. 3d 616, 621 (¶10) (Miss. 2016) (citation omitted). "The ultimate test, when considering the validity of an indictment on appeal, is whether the defendant was prejudiced in the preparation of his defense." *Id.* at 621-22 (¶10) (citation omitted). From the record, it is apparent that Qasoon's defense was not prejudiced. No complaint was made about the indictment, and from the transcript of the trial it is obvious that Qasoon's attorney knew exactly what AB-FUBINACA was, as he walked the State's forensic scientist through its history in an attempt to show that the drug was a recent invention and that it had only been

6

prohibited in Mississippi for about six weeks at the time of the offense. Qasoon's attorney even presented a printout of the Wikipedia entry on AB-FUBINACA, which the witness confirmed contained a generally accurate description of the substance and its history.

¶13. Finally, the indictment sufficiently, albeit imperfectly, specified the code subsection that was alleged to have been violated. The indictment pointed Qasoon to "§ 41-29-113(c)(L)" of the Mississippi Code, which does not exist, as an apparent scrivener's error omitted the "(55)" from the subsection. However, the correct subsection, 41-29-113(c)(55)(L), is the only "(L)" in the section. Coupled with the specific allegation naming AB-FUBINACA, this was adequate to put Qasoon on reasonable notice of the allegation against him.

¶14. As to Qasoon's second contention, the exclusion of the words "or a related isomer," this was not a defect in the indictment, as the indictment, on its face, alleged a crime. Rather, Qasoon's complaint seems to be that there was a variance between the indictment and the proof at trial. We will discuss that issue in turn.

### 3.     Sufficiency of the Evidence / Variance

¶15. Finally, Qasoon contends that his conviction was not supported by sufficient evidence. He bases this argument not on his guilt or innocence under the statute, but on the particular way the jury was instructed, which was to find him guilty if it found beyond a reasonable doubt that he had distributed "AB-FUBINACA, a Schedule I controlled substance." Qasoon points out that the lab technician who examined the substance could only determine it was

AB-FUBINACA *or a related isomer*. The statute expressly prohibits the transfer of isomers of AB-FUBINACA, just as it does the substance itself. *See* Miss. Code Ann. § 41-29-113(c)(55).

¶16. This issue is also procedurally barred. "The supreme court has indicated that any challenge to a variance between the proof and the indictment must be specifically alleged" at trial. *Hughey v. State*, 729 So. 2d 828, 832 (¶19) (Miss. Ct. App. 1998). The defendant must "specifically raise this question in the trial court in a motion for a directed verdict, in a motion for a peremptory instruction or in a motion for a judgment [notwithstanding the verdict]," or it is waived. *Id.* (quoting *Cantrell v. State*, 507 So. 2d 325, 331 (Miss. 1987)).

¶17. Notwithstanding the procedural bar, the flaw in Qasoon's argument is that we are not reviewing the giving of the jury instruction, since that, too, was not challenged. "A reviewing court's limited determination on sufficiency review . . . does not rest on how the jury was instructed. . . . All that a defendant is entitled to on a sufficiency challenge is for the court to make a 'legal' determination whether the evidence was strong enough to reach a jury at all." *Musacchio v. United States,* 136 S. Ct. 709, 715 (2016). Of course, the State still had to prove the offense alleged in the indictment, but the real question here is whether there was a fatal variance between the indictment and the proof. *See Graham v. State*, 185 So. 3d 992, 1001 (¶25) (Miss. 2016) (citation omitted).

¶18. Not all variances are fatal; error occurs only when the variance from the language of the indictment is material. *Id.* at 1000 (¶23) (citation omitted). "A variance is material if

8

it affects the substantive rights of the defendant." *Burrows v. State*, 961 So. 2d 701, 705 (¶11) (Miss. 2007) (citation omitted). The variance is not material if the State's proof is "practically and substantially, though not identically, the same as that alleged." *See Roney v. State*, 153 Miss. 290, 297, 120 So. 445, 446 (1929) (quoting *Bowers v. State*, 145 Miss. 832, 835, 111 So. 301, 301 (1927)).

¶19. Our caselaw is replete with similar examples of minor substitutions of proof that were not found to be material variances. In *Roney*, no error was found even though the indictment alleged that the defendant committed an aggravated assault with "brass knucks," and the proof showed it was done with a crutch. *See Roney*, 153 Miss. at 298, 120 So. at 446. In *Bowers*, the defendant was alleged to have struck the victim with a wrench when the proof showed that the weapon was a stick. *See Bowers*, 145 Miss. at 835, 111 So. at 301. In *Burrows*, the defendant was alleged to have digitally penetrated the victim, while the proof showed he used an object. *See Burrows,* 961 So. 2d at 706 (¶14). And in *Graham*, the allegation was that the defendant had performed fellatio on the victim, but it was adequate to prove that the victim had performed fellatio on the defendant. *See Graham,* 185 So. 3d at 998-99 (¶¶16-17). In these cases, the supreme court reasoned that the indictment had sufficiently informed the defendant that he was alleged to have committed a certain offense, and the proof had showed that the same crime had been committed, just in a somewhat different way than alleged; and the defendant's "ability to prepare and present a defense to the [offense alleged] was not materially affected." *See Burrows,* 961 So. 2d at 706 (¶14).

9

¶20. Here, Qasoon's indictment alleged that the offense was committed in an admittedly narrow way, but the indictment gave Qasoon adequate notice of the crime he was alleged to have committed. The proof at trial showed that he did in fact commit that crime, as he was just as guilty of the same offense had the substance been an isomer of AB-FUBINACA rather than AB-FUBINACA itself. *See* § 41-29-113(c)(55). The distinction between AB-FUBINACA and an isomer of AB-FUBINACA did not affect Qasoon's defense; in fact, the issue seems to have gone unnoticed until this appeal. We conclude that the variance between the indictment and the proof was not material and therefore not fatal. This issue is without merit in addition to being procedurally barred.

¶21. **AFFIRMED.**

**LEE, C.J., GRIFFIS, P.J., BARNES, CARLTON, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**